FILED

2024 Jul-23  AM 10:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No: 2:24-cr-015-AMM-SGC** |
| | ) | |
| **BERT EUGENE NEFF** | ) | |

## <u>GOVERNMENT'S SENTENCING MEMORANDUM AND OPPOSITION TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE</u>

Bert Eugene Neff is a professional gambler. Faced with a federal grand jury investigation, he worked to game the system. The defendant destroyed evidence, tampered with witnesses, and provided false statements to the Federal Bureau of Investigation. He did not do this once. He did it on dozens of occasions, and he did so for the greater part of a year. The defendant now seeks to cash in on this bet— asking the Court to ignore the gravity of his misconduct and impose a non-custodial sentence. This would send a terrible message. For the defendant's conduct, the Section 3553(a) factors demand a meaningful term of custody.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the defendant's plea agreement, (ECF No. 2), and as detailed in the presentence report prepared by the U.S. Probation Office, the defendant orchestrated an eight-month effort to sabotage a federal grand jury investigation into suspicious gambling activity surrounding a college baseball game. During that investigation, the defendant destroyed his mobile phone (*id.* ¶¶ 13-14); instructed

1

multiple witnesses to replace their mobile phones or at least delete the encrypted messaging application Signal from their devices (*id.* ¶¶ 15, 19); lied to the FBI (*id.* ¶¶ 17-18); and advised a witness not to comply with a federal grand jury subpoena (*id.* ¶ 20). Moreover, in an effort to influence the grand jury testimony of two witnesses, the defendant participated in a one-hour twenty-one-minute call where he coached the witnesses on topics related to the investigation as the witnesses drove to Birmingham, Alabama, to testify before a grand jury. (*Id.* ¶ 22.)

In January 2024, on the eve of indictment, the defendant executed a plea agreement and accepted responsibility for his obstructive conduct. *See* ECF Nos. 1, 2. Two months later, he pleaded guilty to obstruction of justice in violation of 18 U.S.C. § 1503(a). *See* March 19, 2024, Minute Entry.

## II.   SENTENCING RECOMMENDATION

### A.   The Calculation of Neff's Guidelines Range

Although the guidelines are advisory, they remain "the starting point and the initial benchmark" in determining the sentence that would be "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49 (2007). The guidelines reflect the Sentencing Commission's examination of "tens of thousands of sentences" over many years, and they "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 349 (2007). It is

2

therefore "fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve" those statutory goals. *Id.*

Here, the U.S. Probation Office calculates the defendant's total offense level as follows:

- The Sentencing Guideline for 18 U.S.C. § 1503 offenses is U.S.S.G. § 2J1.2 (PSR ¶ 29.) Section § 2J1.2(a) provides that an offense involving obstruction of justice has an offense level of 14. (*Id.*)

- Pursuant to § 2J1.2(b)(3), because the "offense . . . involved the selection of an[] essential or especially probative . . . tangible object, to destroy or alter" and "was otherwise extensive in scope, planning, or preparation," the offense level is increased by 2 levels. (*Id.* ¶ 30.)

- Pursuant to § 3E1.1(a)-(b) because the defendant has demonstrated acceptance of responsibility for the offense and timely notified authorities of the intention to enter a plea of guilty, the offense level is decreased by 3 levels. (*Id.* ¶¶ 36-37.)

The U.S. Probation office also calculated that the defendant had no criminal history points, resulting in a criminal history category of I. (*Id.* ¶¶ 43-44.) In light of that, and because the defendant meets the criteria of U.S.S.G. § 4C1.1(a)(1)-(10), the offense level is decreased by another two levels. (*Id.* ¶ 38.) Based upon these calculations, the U.S. Probation Office calculated the defendant's advisory Guidelines range to be 8 to 14 months. (*Id.* ¶ 68.) The Government agrees and believes that the Guidelines calculations in the PSR are correct.

3

**B.      An Eight-Month Sentence is Fair and Reasonable**

The United States submits that an eight-month sentence is appropriate and would meet the objectives set forth in Section 3553(a), particularly given (*i*) the nature, circumstances, and seriousness of the defendant's crime; (*ii*) the history and characteristics of the defendant and the need for specific deterrence; and (*iii*) the need to promote respect for the law and to afford adequate deterrence. 18 U.S.C. § 3553(a)(1), (2)(A)-(B). This sentence would correspond to one month in custody for each month the defendant worked to thwart the government's investigation.

*First*, the nature and circumstances of the defendant's crimes are very serious. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Over the greater part of a year, the defendant took nearly every step one can take to obstruct justice. He destroyed evidence, tampered with witnesses, and lied to the FBI—all in an effort to interfere with a grand jury investigation. Worse, the defendant enlisted friends and family to help him in his effort to manipulate an investigation into his own misconduct—putting their liberty in jeopardy. Through this misconduct, the defendant demonstrated a disregard for law enforcement, the grand jury process, and the rule of law.

The defendant also demonstrated an uncommon persistence in his effort to obstruct justice. Not only did he destroy his phone at the outset of the investigation. He doubled down on obstruction at every opportunity, compounding the seriousness of the offense. As a result, the defendant wasted law enforcement and prosecutorial

resources. The government executed multiple search warrants, interviewed and reinterviewed witnesses, and called witnesses to testify before the grand jury on multiple occasions because of Neff's efforts to sabotage the investigation.

In his sentencing memorandum, the defendant argues that a non-custodial sentence would reflect the seriousness of the offense, in part, because the defendant will be a convicted felon going forward. (ECF No. 20 at 7.) But, as the Eleventh Circuit has explained, "[t]he problem with using felon status to support a downward variance is that all but a tiny percentage of those to whom the sentencing guidelines are applied will be 'a convicted felon going forward.'" *United States v. Howard*, 28 F.4th 180, 215 (11th Cir. 2022). "A factor that exists in [the vast majority of] cases is not a proper basis for varying upward or downward from the guidelines range. It is just an expected, ordinary, everyday fact of life for defendants sentenced under the guidelines." *Id*. The fact that the defendant will have a felony on his record does not support a variance, let alone a departure.

The other collateral consequences cited by the defendant are similarly irrelevant. *Cf. United States v. Morgan*, 635 F. App'x 423, 445 (10th Cir. 2015) ("By considering publicity, loss of law license, and deterioration of physical and financial health as punishment, the court impermissibly focused on the collateral consequences of [the defendant's] prosecution and conviction."). Neff highlights the fact his misconduct has garnered significant media attention, which has caused him

and his family embarrassment and hurt his business. But "[t]he Sentencing Guidelines authorize no special sentencing discounts on account of economic or social status." *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013).

*Second*, a guidelines sentence is necessary given the defendant's history and the need for specific deterrence. The defendant did not commit some one-off mistake here. For eight months, the defendant repeatedly and persistently thumbed his nose at law enforcement and took steps to frustrate the investigation into his misconduct. For that reason, specific deterrence is a larger consideration here than in other cases involving white-collar defendants without prior convictions.

Moreover, there is nothing in the defendant's background or history that excuses or justifies his behavior. The defendant's sentencing submission does not even address his conduct in any meaningful way—only minimizing by suggesting that the defendant was "[unable] to foresee the consequences of his behavior . . . ." (ECF No. 20 at 2.) The defendant's submission instead focuses entirely on the burden that his misconduct has placed on his family, including his adult children. This is unfortunate, but it only underscores the seriousness of the defendant's conduct. A defendant who breaks the law without causing harm to his family should not be punished more severely. Similarly, Neff should not be permitted to escape just punishment because his illegal conduct impacted others close to him. It is also notable that nearly all of the obstructive acts charged in the Information occurred

6

*after* news surrounding Neff's suspicious gambling broke and the collateral consequences detailed in his sentencing submission took place. (ECF No. 20 at 5.)

*Third*, a meaningful custodial sentence is necessary to "promote respect for the law" and "afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(B). The need to promote respect for the law is especially important here. In his sentencing memorandum, the defendant touts his "general law-abiding nature." (ECF No. 20 at 7.) But his conduct since the beginning of the investigation has revealed the exact opposite. At every phase of the investigation, the defendant acted as if the rules did not apply to him. An eight-month custodial sentence will send a message to the defendant that he must play by the same rules as everyone else and will help promote respect for the law.

An eight-month sentence will also promote the goal of general deterrence. While the defendant does not have a criminal history, that does not dimmish the seriousness of his conduct. The defendant's sentence should send a strong message to other "law abiding" individuals that lying to law enforcement, witness tampering, and destroying evidence will not be tolerated—regardless of their background. There is no "one bite rule" when it comes to obstruction of justice. As the Eleventh Circuit has explained, "Congress, the United States Sentencing Commission, and this Court have all decided that general deterrence is a critical factor that must be considered and should play a role in sentencing defendants . . . ." *Howard*, 28 F.4th at 208 (citing

cases). This Section 3553(a) factor is particularly important in this case because "obstruction of justice is a crime that Congress . . . has aggressively sought to deter." *United States v. McQueen*, 727 F.3d 1144, 1159 (11th Cir. 2013) (highlighting legislative history of another obstruction statute, 18 U.S.C. § 1519). A custodial sentence is needed to demonstrate that those who obstruct justice—including those who haven't previously broken the law—will face significant consequences.

## III.   CONCLUSION

For eight months, the defendant tried to manipulate a federal grand jury investigation. His conduct demonstrated a disregard for law enforcement, the grand jury process, and the rule of law. The United States respectfully submits that an eight-month custodial sentence—a month for each month the defendant schemed to obstruct law enforcement—is appropriate, as such a sentence would be sufficient, but not greater than necessary to serve the legitimate purposes of sentencing.

Dated:    July 23, 2024
          Birmingham, Alabama

                              Respectfully submitted,

                              PRIM F. ESCALONA
                              United States Attorney

                    By:   */s/ Edward J. Canter*
                              Edward J. Canter
                              Lloyd C. Peeples, III
                              Assistant United States Attorneys
                              Tel: (205) 244-2001

8

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 23, 2024, I filed a copy of the above pleading electronically using CM/ECF, which caused a copy to be sent to counsel of record.

/s/ Edward J. Canter
Edward J. Canter
Assistant United States Attorney
Tel: (205) 244-2254